IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GERMAN SOTO TORRES<br><br>**Plaintiff(s)**<br><br>v.<br><br>ROBERT MUELLER, et al.,<br><br>**Defendants** | **CIVIL NO.** 06-1961(JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Pending before the Court is Robert Mueller ("Mueller") and Luis Fraticelli's ("Fraticelli"), Motion to Amend/Correct (Docket No. 34). For the reasons set forth below Defendants' Motion to Amend/Correct is **DENIED**.

**Factual and Procedural Background**

On September 22, 2006 German Soto Torres (hereinafter, "Plaintiff") filed a complaint against Mueller in his official capacity, as Director of the Federal Bureau of Investigations (FBI), Fraticelli as Special Agent in Charge (SAC), and ten unknown Agents of the FBI, each individually and in their official capacities and on behalf of their respective conjugal partnerships (hereinafter, "Defendants"). Plaintiff alleges that Defendants violated his Constitutional Fourth Amendment rights, and he seeks relief as authorized by Bivens v. Six Unknown Agents of the Bureau of Narcotics, 403 U.S. 388 (1971). (Docket No. 1).

On September 23, 2005, federal agents conducted an operative to arrest Mr. Filiberto Ojeda Rios ("Ojeda"). (Docket No. 1). The FBI determined that Ojeda was probably living in a house contiguous to Plaintiff's parents' home, located in the Plan Bonito sector of Hormigueros. (Docket No. 1). Plaintiff alleges that agents had been surveilling his neighbor's residence since September 19, 2005. (Docket No. 1).

Around 3:45 p.m. that same day, Plaintiff arrived at his parents' home. (Docket No. 1). He proceeded to feed his mare and do some work on the fences around the property. (Docket No. 1). Plaintiff alleges that at some point between 3:45 p.m. and 4:15 p.m two unidentified helicopters flew over the location of his house. (Docket No. 1).

Defendants contend that a decision was made in the early afternoon of September 23, 2005, to approach Ojeda's residence to arrest him. (Docket No. 15). Defendants claim that surveillance reported traffic on the road which led to Plaintiff's parents' home. (Docket No. 15). Consequently, they decided that Plaintiff's house "needed to be cleared of threats." (Docket No. 15). At the same time, several vehicles full of federal agents arrived at Plaintiff's property. (Docket No. 1). Defendants allege that when they arrived at Plaintiff's parents' house they found him outside the residence. (Docket No. 15).

Plaintiff claims that between the hours of 4:15 p.m. and 4:30

Civil No. 06-1961 (JAG)                                                3

p.m. he was arrested, assaulted and pushed. (Docket No. 1). On the other hand, Defendants state that when they found Plaintiff they ordered him to the ground and the agents handcuffed him per FBI procedure. (Docket No. 15).  They further assert that at no time during the arrest did Plaintiff complain that the restraints caused him injury. (Docket No. 15).  However, Plaintiff contends that the handcuffs were so tight that it led him to complain several times to the federal agents of pain in his wrists and on his shoulders. (Docket No. 23).  He goes on to state that he remained arrested and handcuffed in the ground from 4:21 p.m. to 5:15 p.m. (Docket No. 23). Further, Plaintiff contends that at 5:15 p.m he was taken to the residence's first floor and was seated on a stool. (Docket No. 23).  Defendants assert that around 5:00 p.m. FBI agents escorted Plaintiff to a safer location, where they placed him in a seated position and gave him water. (Docket No. 15).  They go on to state that they seated him behind a vehicle's wheel and engine block in order to protect him from alleged gunfire. (Docket No. 15).

During this time Defendants allege that they "took great pains to ensure Plaintiff's comfort as well as his safety," such as loosening his handcuffs, while reassuring him that they would release him soon. (Docket No. 15). Nevertheless, Plaintiff states that after two hours and several requests the agents did in fact loosen the handcuffs, but just the right one. (Docket No. 23). Further, Plaintiff denies that the agents assured him they would

Civil No. 06-1961 (JAG)                                                       4

release him.  On the contrary, Plaintiff states that the agents interrogated him repeatedly under threats of incarceration. (Docket No. 23).  Defendants assert that a federal agent telephoned Plaintiff's mother and permitted him to speak with her. (Docket No. 15). Plaintiff admits that after his mother attempted to call him at his cell phone on several occasions, one agent talked to her informing her he was fine. (Docket No. 23).  Defendants state that when it became dark, agents escorted Plaintiff downhill from the residence, confirmed his identity and released him without harming him. (Docket No. 15). Countering these allegations, Plaintiff states that he was harmed in his wrists and shoulders and suffered great emotional distress. (Docket No. 23).  During this time Defendants allege that Plaintiff's parents' residence stood in the middle of a gun battle occurring on Ojeda's residence between Ojeda and the FBI. (Docket No. 15).  However, Plaintiff alleges that no gunfire was going on in close proximity to Plaintiff's location. (Docket No. 23). Plaintiff contends that he was released around 8:00 p.m. (Docket No. 1).

On January 16, 2007, Defendants filed a Motion to Dismiss the complaint for failure to properly serve Defendants since allegedly the complaint was not served upon the United States Attorney, nor the Attorney General of the United States. (Docket No. 5).  On January 30, 2007, Plaintiffs submitted a Response in Opposition to Defendants' Motion to Dismiss. (Docket No. 8).  Plaintiff argued

Civil No. 06-1961 (JAG)                                                    5

that he properly served the United States, and provided several exhibits to demonstrate that he had sent copies of the complaint and summons to both the civil and process clerk at the office of the United States Attorney and the Attorney General of the United States at Washington D.C., pursuant to Fed.R.Civ.P. 4(I). Consequently, he stated that Defendants were properly served. (Docket No. 8). For said reasons, on September 5, 2007, this Court denied Defendants' Motion to Dismiss. (Docket No. 12).

On September 19, 2007, Defendants filed a Motion for Summary Judgment. (Docket No. 13). They argued that Plaintiff's allegations failed to create any genuine issue of material fact regarding whether a reasonable FBI employee would have viewed the allegations as specifically violating any clearly established constitutional right. (Docket No. 14). On August 6, 2008, Plaintiff filed an Amended Complaint to include a claim of excessive force. (Docket No. 22). On the same day, Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment. (Docket No. 24). On August 19, 2008, Defendants submitted a Reply to Plaintiff's Opposition to their Motion for Summary Judgment. (Docket No. 30).

On September 24, 2008, this Court entered and Opinion and Order (Docket No. 33) denying Defendants' Motion for Summary Judgment (Docket No. 13). This Court found that Plaintiff proffered a valid Constitutional violation as to Defendants'

alleged Fourth Amendment violation of unlawful seizure. Further, we found that Defendants were not entitled to qualified immunity. Thereafter, on October 8, 2008, Defendants filed the present Motion to Amend/Correct said order.

## STANDARD OF REVIEW

A. <u>Motion for Reconsideration</u>

Motions for reconsideration are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in the law. <u>See</u> <u>Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.</u>, 37 F.3d 25, 29 (1st Cir. 1994)(internal citations omitted). Motions for reconsideration may not be used by the losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." <u>National Metal Finishing Com.</u>, 899 F.2d 119, 123 (1st Cir. 1990).

## DISCUSSION

Defendants allege that 1) The District Court should reconsider its ruling that Defendants are not entitled to qualified immunity as to Plaintiff's unlawful seizure claim; and 2) that the Court should amend its order and grant Defendants' Motion for Summary Judgment regarding Plaintiff's excessive force claim.

First, with regards to the issue of qualified immunity as to Plaintiff's unlawful seizure claim, Defendant rehashes the same arguments already addressed by this Court in its Opinion and Order,

Civil No. 06-1961 (JAG)                                              7

we see no reason to delve further into this matter. Defendants do not proffer any manifest errors of law, present newly discovered evidence, or any intervening change in the law. Consequently, we shall proceed to evaluate Plaintiff's excessive force claim.

    Defendants correctly point to the fact that the issue of a Fourth Amendment violation based on the use of excessive force remains unresolved. The Fourth Amendment protects citizens against "unreasonable" searches and seizures from the government.  U.S. Const. Amend. IV.  To determine whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against countervailing governmental interests at stake. Graham v. Connor, 490 U.S. 386 (1989). Further, in determining the "reasonable" standard, the question is whether officers' actions are "objectively reasonable" in light of facts and circumstances confronting them, without regard to their underlying intent or motivation. Id. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. citing Terry v. Ohio, 392 U.S. 1, 20 (1968). Further, the Supreme Court stated that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in

Civil No. 06-1961 (JAG)                                                    8

circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 397. However, deadly force may not be used unless it is "necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Tennessee v. Garner, 471 U.S. 1,11 (1985).

Nevertheless, there are several genuine issues of material fact at this stage which preclude summary judgment on Plaintiff's excessive force claim under the Fourth Amendment. The following issues are still in dispute: 1) The manner in which the agents arrested Plaintiff.  Plaintiff claims that he was violently assaulted and pushed to the ground, while Defendants contend that they followed FBI procedure; 2) Plaintiff alleges that he complained multiple times that the handcuffs were hurting him and causing pain in his writs and shoulders.  On the other hand, Defendants claim that Plaintiff did not complain at any point regarding the handcuffs; 3) Plaintiff alleges that during the arrest there was no gunfire in close proximity to his location. Defendants contend that Plaintiff's parents' residence stood in the middle of the gun battle occurring between Ojeda and the FBI.[1]

---

[1] This Court need not address the issue of qualified immunity with regards to the excessive force claim since there are issues of material fact remaining impeding us from determining if a constitutional violation as to excessive force exists.

Civil No. 06-1961 (JAG)                                                        9

Consequently, since there are genuine issues of material fact in this case, and Defendants are not entitled to qualified immunity summary judgment is not appropriate as to the issue of excessive force.  Accordingly the present Motion for Reconsideration must be denied.

## CONCLUSION

For the reasons stated above this Court **DENIES** Defendants' Motion to Amend/Correct.


IT IS SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of April, 2009.


                                        s/ Jay A. Garcia-Gregory
                                        JAY A. GARCIA-GREGORY
                                        United States District Judge