```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF PUERTO RICO
```

GERMÁN A. SOTO-TORRES,

    **Plaintiff,**

        v.                        CIVIL NO. 06-1961 (JAG)

ROBERT MUELLER, et al.,

    **Defendant.**

## OPINION AND ORDER

Garcia-Gregory, D.J.

Pending before the Court is Germán A. Soto-Torres's ("Plaintiff") Motion to re-issue the Court's Case Management Order to govern the proceedings against the ten unknown Federal Bureau of Investigation ("FBI") Agents. (Docket No. 102). More than five years after the complaint in this case was filed, Plaintiff purports to incorporate those Agents as named defendants in this case. For the reasons set forth below, Plaintiff's Motion is hereby **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2005, federal agents attempted, and failed, to arrest Mr. Filiberto Ojeda-Rios ("Ojeda"). Plaintiff alleges that the FBI determined that Ojeda most probably lived

in a house contiguous to Plaintiff's parents' home, located in the Plan Bonito sector of Hormigueros. Plaintiff states that agents had been surveilling his neighbor's residence since September 19, 2005. (Docket No. 70).

Around 3:45 p.m. that same day, Plaintiff arrived at his parents' home. He proceeded to feed his mare and work on the fences around the property. Plaintiff argues that at some point between 4:10 p.m. and 4:15 p.m. two unidentified helicopters flew over the location of his parents' residence. At the same time, several vehicles full of federal agents arrived at Plaintiff's parents' property. Plaintiff alleges that the federal agents proceeded to handcuff and detain him for over four hours, at which point he was released. (Docket No. 70).

On October 2, 2009, Plaintiff filed a second amended complaint against Mueller in his official capacity as Director of the FBI, Fraticelli as Special Agent in Charge ("SAC"), and ten FBI Agents -each individually and in their official capacities- and on behalf of their respective conjugal partnerships (hereinafter, "Defendants"). Plaintiff alleged that the Agents violated his rights pursuant to the Fourth Amendment and accordingly sought relief under <u>Bivens v. Six Unknown Agents of the Bureau of Narcotics</u>, 403 U.S. 388 (1971). (Docket No. 70).

On November 13, 2009, Defendants filed a Motion for Judgment on the Pleadings. Defendants argued that 1) this Court must dismiss Plaintiff's claims against Fraticelli in his individual capacity for failure to meet the pleading standard established in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); and 2) this Court should dismiss all official capacity claims against Defendants under the doctrine of sovereign immunity. (Docket No. 73). On February 23, 2010, this Court granted in part Defendants' Motion to Dismiss, and dismissed with prejudice all claims against Defendants in their official capacity on grounds of qualified immunity. The Court had set the deadline for discovery by April 23, 2010. Plaintiff filed informative motions claiming that Fraticelli was not complying with the judicially ordered discovery. (Docket Nos. 61, 81).

On April 22, 2010, Fraticelli appealed the denial of his Motion to Dismiss in his individual capacity. On August 19, 2011, the First Circuit held that Fraticelli was entitled to qualified immunity on the individual capacity as well. The Court stated that: "unless there is an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor . . . such that the supervisor's conduct led inexorably to the constitutional violation" a supervisor cannot be held liable for the actions of his subordinates. Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011). Therefore, the

First Circuit ordered Plaintiff's claims against Fraticelli in their individual capacity dismissed.

On December 2, 2011, Plaintiff filed a Motion requesting this Court to re-issue the Case Management Order to continue the proceedings against the ten FBI Agents. Before ruling on that motion, the Court ordered Plaintiff to show cause as to why the case should be continued *at all* with regards to the as-of-yet unnamed defendants.[1] Plaintiff timely complied. (Docket No. 103).

## DISCUSSION

---

[1] On appeal, the First Circuit stated that "[o]nly the Bivens claim against Fraticelli remains and is before us." Soto-Torres v. Fraticelli, 654 F.3d 153, 155 (1st Cir. 2011). This statement brought some confusion to the Court and the parties, because it may fairly be read as recognizing that, out of all the claims in the case (including those against the unnamed defendants), only the ones against Fraticelli remained. This would imply that Plaintiff's claims against the unnamed defendants were dismissed. But this Court issued no such ruling. Alternatively, the Circuit could have noted that only Plaintiff's individual-capacity Bivens claim against Fraticelli remained. This latter interpretation is more reasonable given its comparatively limited scope, and the fact that this Court never ruled upon Plaintiff's Bivens claims against the unnamed Agents. Of course, this interpretation would imply that Plaintiff's claims against the unnamed Agents were still alive. However, the Circuit followed its statement with a curious footnote, noting that "plaintiff has never identified the John Doe unnamed FBI agent defendants." Soto-Torres, 654 F.3d at 155 n.1. Against this backdrop, and in an abundance of caution, the Court found it proper to order Plaintiff to show cause as to why he should be allowed to continue this case against the unidentified Agents.

Plaintiff asks this Court to re-issue the Case Management Order in order to continue his Bivens claims against the unnamed Agents.² However it would appear that Plaintiff is putting the cart before the horse. As the First Circuit noted, Plaintiff has not identified any of the Agents as defendants in this case. Soto-Torres, 654 F.3d at 155 n.1. Only after those defendants are properly identified may this case be continued against them.³

The Federal Rules of Civil Procedure allow a plaintiff to do just that. See Fed.R.Civ.P. 15(a) & (c)(1)(C). But in this case, Rule 15(a)(2) requires Plaintiff to seek leave of court prior to filing his amendment. Thus, the threshold question

---

² "Bivens actions, like actions under § 1983, are considered as personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred." Molina-Acosta v. Martinez, 392 F. Supp. 2d 210, 215 (D.P.R. 2005) (citing Garrett v. Fleming, 362 F.3d 692, 697 (10th Cir.2004)); see also, King v. One Unknown Federal Correctional Officer, 201 F.3d 910, 913 (7th Cir. 2000). Accordingly, the Court will use Puerto Rico law in conducting its analysis.

³ As anticipated by the Court's Order to Show Cause, any such amendment must also satisfy Rule 15(c)'s relation-back provision. See Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993)("'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued. Such an amendment may only be accomplished when all of the specifications of Fed.R.Civ.P. 15(c) are met."); accord Bufalino v. Michigan Bell Telephone Co., 404 F.2d 1023, 1028 (6th Cir.1968), cert. denied, 394 U.S. 987 (1969) (action not commenced against "John Doe" defendants named in original complaint until Does identified and served with process).

raised by Plaintiff's request is whether an amendment to the complaint is appropriate in this case. The Court finds it is not, and accordingly denies Plaintiff's motion.

As the Rule itself states, "leave shall be freely given when justice so requires". Fed.R.Civ.P. 15(a)(2). However, courts may deny leave to amend where an "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment" is apparent or present. U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)); see also Tiernan v. Blyth, Eastman, Dilon & Co., 719 F.2d 1, 4 (1st Cir. 1983). A court may not deny an amendment solely on plaintiff's delay in bringing that motion. See Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15, 20 (1st Cir. 1979) (citing Mercantile Trust Company National Association v. Inland Marine Products, 542 F.2d 1010, 1012 (8th Cir. 1976)). Only where that delay is *undue* may the Court reject the amendment. Id. In this situation, the burden is placed on the movant to show some valid reason for his neglect and delay. See Grant v. News Group Boston, Inc., 55 F.3d 1, 6 (1st Cir. 1995) (citing Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983)). This requirement exists in order to ensure "that defendants are not unfairly prejudiced by these late-coming

plaintiffs and that plaintiffs have not slept on their rights." Young v. Lepone, 305 F.3d 1, 17 (1st Cir. 2002).

### Undue Delay

Here, more than five years have passed since the filing of the original complaint.[4] (Docket No. 1). Though Plaintiff managed to amend his complaint twice during the course of this litigation, he never replaced his John Doe pleadings with the names of the FBI Agents. (Docket Nos. 22, 70).

Plaintiff seeks to continue the case as to the unnamed Agents, but fails to specify what "reasonable efforts" were taken to discover the exact identity of the Agents. Corey-Lanuza v. Medic Emergency Specialties, Inc., 229 F. Supp. 2d 92, 99 (D.P.R. 2002). The Court notes that "the record is devoid of any measures having been utilized-either judicial or extrajudicial-in this direction." Id. Throughout these proceedings, Plaintiff relied on judicial discovery to ascertain the names of the Agents rather than pursue the identities of his tortfeasors by other means.

Moreover, Plaintiff himself admitted that he possessed the business card of one of the Agents that was present at the scene

---

[4] The First Circuit has affirmed the denial of a motion to relate back an amendment when a plaintiff has stood idle for more than two years without any valid reason explaining his neglect and delay. See Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15, 20 (1st Cir. 1979).

Civil No. 06-1961                                                       8

of the events. (Docket No. 23-2 at 7-8). Even though the business card contained the name as well as the contact information of the Agent, Plaintiff inexplicably failed to include him in the original complaint, or in the subsequent amendments to the same. (Docket Nos. 1, 22, 70). It is plainly clear that Plaintiff had additional avenues -not just through judicial discovery- through which he could uncover the identities of the rest of the Agents present that day. By exercising a minimal level of diligence, Plaintiff could have attempted to discover the identities of the rest of the Agents via extra-judicial inquiries with the Agent whose identity and contact information was known to Plaintiff. If such thing was not possible, then other remedies were still available to Plaintiff. For instance, Plaintiff could have filed a formal request of information to the FBI office pursuant to the Freedom of Information Act ("FIOA"). See King v. One Unknown Federal Correctional Officer, 201 F.3d 910, 912 (7th Cir. 2000)(Plaintiff made requests to the United States Bureau of Prisons pursuant to the FIOA in order to uncover the identity of the correctional officer whom allegedly was indifferent to his safety in prison.). And, of course, Plaintiff could have sought a judicial subpoena in order to compel the known Agent to disclose the identity of the rest of the Agents.[5]

---

[5] A subpoena may be requested in order to uncover the identity of

After carefully analyzing the extensive record of this case, the Court concludes that Plaintiff was not diligent in discovering the identities of the rest of the Agents. This does not mean that Plaintiff had to "take heroic measures to enforce his rights against the recalcitrant opponent." Carmona v. Toledo, 215 F.3d 124, 135 (1st Cir. 2000). Rather, Plaintiff relied exclusively on judicial discovery through the named defendants and overlooked other methods for uncovering the information that existed. Plaintiff has not given a valid reason for his lack of diligence in employing those other methods. See Grant v. News Group Boston, Inc., 55 F.3d 1, 6 (1st Cir. 1995). As of today, the delay in amending the complaint is excessive, and most importantly, undue.

While Plaintiff's motion could be denied on this ground alone, further examination serves to buttress our denial of Plaintiff's request.

### Prejudice

Given the extent of Plaintiff's delay here, any amendment bringing new defendants would be prejudicial to those new defendants. And that prejudice "is obvious: it is the prejudice

---

unknown defendants. See Ayala-Serrano v. Collazo-Torres, 650 F. Supp. 722, 727 (D.P.R. 1986).

suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." Young, 305 F.3d at 17 (citing Nelson v. County of Allegheny, 60 F.3d 1010, 1014-15 (3rd Cir. 1995)). At this stage, the new defendants will face the daunting prospect of building their defense on evidence that, because of the delay, may be unavailable or incomplete. See Nelson, 60 F.3d at 1015. The evidence can spoil and the witnesses' memories may fade; accordingly, as time goes on, the proposed defendants' ability to defend themselves effectively is prejudiced.

Given that the facts in this case occurred almost seven years ago, the Court finds that new defendants here would be prejudiced by plaintiff's undue delay in incorporating them into the complaint.

### Futility

As a final matter, the Court finds that the amendment required here to continue the case against the unnamed Agents would be futile if granted. As shown below, the Bivens claims against the Agents are time-barred under the one-year statute of limitations provided by the local tort statute, Article 1802 of the Puerto Rico Civil Code. P.R. Laws Ann. tit. 31 § 5141

(1930); see Kaiser v. Armstrong World Indus., Inc., 872 F.2d 512, 515 (1st Cir. 1989).

Rule 15(c) of the Federal Rules of Civil Procedure allows a plaintiff to change "the party or the naming of the party against whom a claim is asserted" if certain conditions are met. Namely, the proposed amendment must assert a "claim that arose out of the occurrence set out in the original pleading." Id. Also, the party to be brought in by the amendment must have 1) "received such notice of the action that it will not be prejudiced in defending on the merits"; and 2) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Id. If these conditions are met, the proposed amendment "relates back" to the date of the original pleading.

Federal Courts have uniformly held that a plaintiff's lack of information regarding the identity of the unknown defendant is *not* a "mistake" within the meaning of Rule 15(c)(3). See Wilson, 23 F.3d at 563; see also Smith v. City of Akron, No. 10-4418, 2012 WL 1139003, at *2 (6th Cir. Apr. 6, 2012)(collecting cases and noting agreement among all Circuit Courts); accord Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 200 (3rd Cir. 2001). Rather, Rule 15's purpose is to remedy the mistake that occurs when a plaintiff *knows* who to sue, but ends up suing the wrong person. Wilson, 23 F.3d at 563. Here,

Plaintiff argues that for various reasons, he lacked the necessary information to identify the Agents in this case. (Docket No. 111). Consequently, Plaintiff never mistook the persons he intended to sue; rather, he just did not know specifically *who* to sue. Since Plaintiff *never knew* who to sue, he could not commit a "mistake" under Rule 15(c). Therefore, any amendment incorporating the unnamed Agents in this case would not relate back to the date of the original filing. With this in mind, the Court will assess whether Plaintiff's amendment is time-barred by local law.

"The statute of limitations governing a civil negligence action in Puerto Rico is one year ... from the time the aggrieved person has knowledge of the injury." Kaiser, 872 F.2d at 515. "The one-year period does not begin to run until the plaintiff possesses, *or with due diligence would possess*, information sufficient to permit suit." Corey-Lanuza, 229 F. Supp. 2d at 98 (citing Villarini-Garcia v. Hospital Del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993))(emphasis added). "The Supreme Court of Puerto Rico has defined knowledge as both notice of the injury and notice of the person who caused it." Kaiser, 872 F.2d at 515-16 (citing Colon-Prieto v. Geigel, 15 P.R. Offic. Trans. 313, 330-31 (1984)).

In making this assessment, a Court must inquire if the plaintiff's unawareness of the injury or author of it is due to

the plaintiff's own negligence. If it does, then the clock will continue to tick with regards to the one-year limitation period. See Fragoso v. Lopez, 991 F.2d 878, 886-87 (1st Cir. 1993) (citing Santiago-Hodge v. Parke Davis & Co, 883 F.2d 6, 8 (1st Cir. 1987)). As discussed above, Plaintiff did not engage in bonafide efforts to attain the information necessary to sue the unnamed Agents. As to those defendants, then, the statute of limitations was never tolled. Accordingly, Plaintiffs cannot now, almost six years after the complaint was filed in this case, amend the complaint to bring the unnamed Agents into this case. Any such amendment would be futile.

## CONCLUSION

In view of the foregoing, this Court **DENIES** Plaintiff's Motion (Docket No. 102) to re-issue the Case Management Order to govern the proceedings against the unknown FBI Agents. Furthermore, for the reasons stated above, these claims are hereby **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of August, 2012.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge